**Vincent MILLER, Plaintiff–Appellant,**

v.

**Donald SELSKY, Director of Special Housing, S. Bruso, Educational Supervisor at Barehill Correctional Facility, Defendants–Appellees.**

**No. 632, Docket 95–2849.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1997.

Decided April 2, 1997.

Reid Muoio, New York City (Daniel H. Weiner, Julie R. Wohlgemuth, Gretchen A. Johanns, Hughes Hubbard & Reed, New York City, of counsel), for Plaintiff–Appellant.

Martin A. Hotvet, Assistant Attorney General, Albany, N.Y. (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, Albany, N.Y., of counsel), for Defendants–Appellees.

Before: VAN GRAAFEILAND, LEVAL, and CABRANES, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff Vincent Miller, a prison inmate, appeals from a grant of summary judgment by the United States District Court for the Northern District of New York (Con.G.Cholakis, *Judge* ), dismissing his civil rights action under 42 U.S.C. § 1983. Miller alleged that defendants, who are prison officials, deprived him of procedural due process in disciplinary proceedings that led to his confinement in a special housing unit (SHU) for 125 days. Citing *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the district court ruled, as a matter of law, that disciplinary confinement in segregated housing does not involve a constitutionally protected liberty interest because it does not impose a hardship that is "atypical and significant" for convicted prisoners. As a result, the court found that Miller's segregation was not within the concerns of the Fourteenth Amendment, and he had no valid claim under the due process clause.

Because the district court based its ruling on an erroneous interpretation of *Sandin,* we vacate the judgment and remand for further proceedings.

*Background*

On September 6, 1992, Miller, an inmate at the Bare Hill Correctional Facility, was charged with assault, fighting, and creating a disturbance. Sergeant Rocque, a corrections officer who is not a party to this action, filed a written report stating that he had found, "[t]hrough investigation and information received from confidential sources," that Miller had assaulted another inmate and inflicted physical injury on him.

From September 10 to 14, 1992, defendant Corrections Officer S. Bruso held hearings on these charges. Stating that he was relying on Rocque's report, "confidential testimony," and "conflicting testimony" of witnesses

called by Miller, Bruso found Miller guilty and imposed punishment of 180 days in the SHU and the loss of six months of good time credit. Bruso noted that "this severe penalty is warranted" because the victim was "severely beaten and could have sustained permanent injury."

Bruso denied Miller's request to attend the testimony of the confidential witnesses or to review transcripts of that testimony. On a "witness interview" form given to Miller, Bruso explained that "I have taken confidential testimony, and by its very nature you cannot be allowed to receive it."

Miller thereafter filed an administrative appeal with defendant Donald Selsky, the Director of the Special Housing/Inmate Disciplinary Program for the Department of Corrections, who affirmed Bruso's ruling on November 16, 1992. On November 29, 1992, Miller brought an Article 78 proceeding in New York Supreme Court, Franklin County, to challenge this decision. On January 8, 1993, Selsky administratively reversed his prior ruling and vacated the imposition of discipline on Miller. In internal prison correspondence, Selsky explained that he had reversed his previous decision after consulting with the State Attorney General's Office because the record of Bruso's hearing was incomplete and the "confidential tape" was "unavailable for judicial review." Although the charges were "expunged" from his record, Miller served 125 days in the SHU before the finding of misconduct was vacated.

On February 3, 1994, Miller brought this action *pro se*[1] under 42 U.S.C. § 1983, alleging that defendants deprived him of procedural due process by excluding him from the confidential testimony and by preventing him from reviewing transcripts of that testimony. The complaint also alleged that Selsky violated New York law by initially affirming the imposition of discipline. Miller sought compensatory and punitive damages.

On November 10, 1994, defendants moved for summary judgment arguing that (1) Selsky's eventual reversal of the initial finding "cured all procedural errors"; (2) Selsky was entitled to absolute immunity; (3) both defendants were entitled to qualified immunity; and (4) Miller could not recover compensatory or punitive damages because he had not alleged a constitutional injury.

Magistrate Judge Daniel Scanlon Jr., to whom the motion was referred for recommendation and report, recommended that defendants' motion for summary judgment be granted.[2] The magistrate judge found that Miller had received due process during the disciplinary proceedings and that Selsky had qualified immunity from any potential liability for failing to ascertain promptly that the hearing record was incomplete and therefore subject to reversal.

On review, the district court reached the same result,[3] but applied another rationale, drawn from the United States Supreme Court's intervening decision in *Sandin*. The district court interpreted *Sandin* to mean that the imposition of segregated confinement, as a matter of law, does not create a "hardship" that is "atypical and significant" compared with the "ordinary incidents of prison life," and accordingly does not involve an actionable deprivation of liberty. The court also held that as Miller's good time credits were restored before he became eligible for parole, their temporary loss did not deprive him of liberty.

### Discussion

We agree with the district court that in *Sandin* the Supreme Court explicitly held that disciplinary confinement does not deprive an inmate of a liberty interest unless the confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300. But the Court did not intimate that disciplin-

---

1. Although Miller proceeded *pro se* in the district court, he has been represented by counsel on appeal.

2. Report and Recommendation dated May 8, 1995.

3. Memorandum Decision and Order dated November 22, 1995.

ary confinement could never, as a matter of law, impose such a hardship.

To the contrary, the Court examined closely the circumstances of the inmate's confinement and compared them to the conditions facing the general inmate population. Noting the duration (30 days) and character of the confinement, and the fact it would not "inevitably affect the duration of his sentence," the Court found that the "regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *id.* at — – —, 115 S.Ct. at 2301–02.

The language and analysis in *Sandin* make clear that the Court did not intend to suggest that discipline in segregated confinement could *never* present such an "atypical, significant deprivation." *Id.* at —, 115 S.Ct. at 2301. We have implicitly reached this conclusion in other cases since the Supreme Court decided *Sandin*. In *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (per curiam), we affirmed the dismissal of an inmate's action because the district court's "extensive fact-finding" supported its decision. In doing so, we noted that the inmate had "not shown that the conditions of his confinement in the SHU were dramatically different from the 'basic conditions of [his] indeterminate sentence.'" *Id.* (quoting *Sandin*, — U.S. —, 115 S.Ct. at 2301). In *Samuels v. Mockry*, 77 F.3d 34 (2d Cir.1996), and *Branham v. Meachum*, 77 F.3d 626 (2d Cir.1996), we remanded for district courts to consider whether inmates who had been confined to their cells had been deprived of a liberty interest.

These earlier post-*Sandin* decisions implied what we now state explicitly: *Sandin* did not create a *per se* blanket rule that disciplinary confinement may never implicate a liberty interest. Courts of appeals in other circuits have apparently come to the same conclusion, recognizing that district courts

must examine the circumstances of a confinement to determine whether that confinement affected a liberty interest. *See, e.g., Kennedy v. Blankenship*, 100 F.3d 640, 642–43 (8th Cir.1996); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996); *Williams v. Fountain*, 77 F.3d 372, 374 n. 3 (11th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 367, 136 L.Ed.2d 257 (1996); *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir.1995). *But cf. McGuinness v. Dubois*, 75 F.3d 794, 797 n. 3 (1st Cir.1996) (stating, in case involving a 30–day confinement, that the *Sandin* Court "concluded that solitary confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.").

We therefore remand for reconsideration of the defendants' motion for summary judgment. Our remand in no way suggests the motion should be denied. If the district court reaffirms the grant of the motion on the ground that Miller's confinement did not impose an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," the ruling should identify specific facts that support this conclusion.

Because *Sandin* was decided after the parties briefed the summary judgment motion, neither side submitted evidence or arguments on the issue of whether Miller's confinement was an "atypical and significant" deprivation. Nor did the state have the opportunity to make the argument it raises on appeal—that New York statutes and prison regulations do not create a liberty interest in avoiding segregated confinement. Unless the court decides the motion on a different basis, the state should be offered the opportunity to expand the record on the pertinent issues, and Miller to reply. The district court is free as well to rely on other grounds of the defendants' motion, such as whether defendants are entitled to qualified immunity, whether Miller received due process,[4] and whether New York has created a liberty interest in avoiding segregated confinement.

---

**4.** The defendants contend the district court ruled in their favor on the due process issue. Although there is language in the district court's opinion that may support this contention, the passage is unclear and includes a mistaken statement of law

on the effect of administrative reversal of the disciplinary hearing. We are not confident the district court resolved the motion on this alternative ground.

*Conclusion*

We vacate the judgment and remand for further proceedings.