Steve HUSBANDS, Plaintiff,

v.

Robert J. McCLELLAN, Superintendent of Southport Correctional Facility; B. Lilac, Correctional Officer at Attica Correctional Facility; Thomas A. Coughlin, III, Commissioner of Department of Correctional Services for the State of New York; J. Woodward, Hearing Officer at Southport Correctional Facility, Defendants.

No. 93–CV–6025L.

United States District Court, W.D. New York.

Jan. 13, 1998.

215

Steve Husbands, Copiague, NY, pro se.

Warren S. Landau, Smithtown, NY, for Plaintiff.

Carlos Rodriguez, Office of New York State, Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

By Decision and Order entered March 26, 1997, this Court denied plaintiff, Steve Husbands' ("Husbands"), motion to amend his 42 U.S.C. § 1983 complaint, granted defendants' motion for summary judgment, and dismissed the complaint in its entirety.

On April 14, 1997, Husbands filed a motion to amend the judgment pursuant to Fed. R.Civ.P. 59(e). In his motion to amend, Husbands moves to vacate this Court's decision dismissing his 14th Amendment due process claim, which decision was premised on *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), based on the recent decision in *Miller v. Selsky*, 111 F.3d 7 (2d Cir.1997). Husbands also claims that the Court misapprehended his argument in his motion to amend his complaint and misconstrued the law governing retaliation claims under § 1983.

For the reasons discussed, *infra*, Husbands' motion to amend the judgment is denied.

### FACTS

The facts of this case are fully set forth in this Court's previous decision. Briefly, while an inmate at Southport Correctional Facility, Husbands was charged with possession of contraband. Following a Tier III disciplinary hearing, Husbands was found guilty of the charge and was sentenced to one year in the Special Housing Unit ("SHU"), with loss of privileges, and one year recommended loss of his good time credits. Initially, the guilty finding was administratively affirmed, although the sentence of one year in SHU was reduced to 180 days. The guilty finding was eventually administratively reversed and Husband's record was expunged, although not until after Husbands served 180 days in SHU.

In his complaint, Husbands claimed that his due process rights under the Fourteenth Amendment were violated during the course of the disciplinary hearing. Husbands also sought to amend his complaint to add a claim that the disciplinary ticket issued against him was false and was given as a means to impede or prevent him from filing a grievance against certain corrections officers who had allegedly assaulted Husbands.

In my decision of March 26, 1997, I found that Husbands' proposed amendment to his complaint would be futile as it did not state a claim for retaliation under 42 U.S.C. § 1983. Further, I dismissed Husbands' due process claim on the ground that no liberty interest was involved under authority of *Sandin*.

### DISCUSSION

 In order to prevail in a § 1983 claim a prison inmate must demonstrate that he possessed a liberty or property interest protected by the United States Constitution or federal statutes and that, without due process of law, he was deprived of that interest. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). In *Sandin*, 515 U.S. at 484, the Supreme Court held that disciplinary confinement does not implicate a liberty interest unless that confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Relying on *Sandin*, I determined in the March 26 decision that Husbands' sentence of 180 days in SHU with a loss of various privileges did not impose "atypical and significant hardship" on him in relation to the ordinary incidents of prison life. Thus, Husbands' punishment did not implicate a liberty interest under the Fourteenth Amendment.

In his motion to amend the March 26, 1997 judgment, Husbands urges this Court to reconsider its earlier decision that Husbands' Fourteenth Amendment rights were not violated during the course of his disciplinary hearing. Husbands claims that *Miller, supra*, essentially overruled the line of cases relied upon by this Court in its earlier decision. Further, Husbands claims that the facts of *Miller* are virtually indistinguishable from the facts in the present case.

■ It is true that, according to the *Miller* court, "*Sandin* did not create a *per se* blanket rule that disciplinary confinement may never implicate a liberty interest." *Miller*, 111 F.3d at 9. However, it is equally true that *Miller* does not preclude summary judgment. *Id.* ("Our remand in no way suggests the motion should be denied."). Rather, district courts are required to make factual findings with respect to the conditions of confinement at issue in each case. *Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir.1997); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997); *Miller*, 111 F.3d at 9. The duration of the inmate's disciplinary confinement is relevant to this factual inquiry, as is the restrictiveness of the conditions imposed in relation to the prevailing conditions in the prison at large. *Brooks*, 112 F.3d at 47–49.

Here, Husbands alleges that as a result of defendants' unconstitutional conduct, he was denied certain privileges, deprived of good-time credits, and detained in SHU for 180 days. I reiterate that I do not believe that any of the "punishments" imposed in this case, under all the circumstances, implicated a liberty interest cognizable under the Fourteenth Amendment, and, therefore, Husbands' Fourteenth Amendment due process claim was properly dismissed.

■ The temporary loss of the various privileges alleged in this case—*i.e.*, telephone, package, commissary, and recreation privileges—does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate. *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation); *Brooks v. DiFasi*, 1997 WL 436750, at *3 (W.D.N.Y. July 30, 1997) (on remand) (loss of recreation, package, commissary, special events, and telephone privileges did not amount to an atypical and significant deprivation). Although Husbands was denied certain privileges in SHU that inmates in the general population enjoy, the conditions of his confinement fell "within the expected parameters of the sentence imposed by a court of law," *Frazier*, 81 F.3d at 317 (quoting *Sandin*, 515 U.S. at

485), and the loss of the various "privileges" does not alter that.

■ Husbands' temporary loss of good-time credits also did not deprive him of a liberty interest. It is well settled that where, as here, an inmate's good-time credits are completely restored after a successful administrative appeal and before their loss could have any impact on the duration of the inmate's sentence, no liberty interest is implicated. *Beaman v. Coombe*, 1997 WL 538833, at *4 n. 3 (S.D.N.Y. Aug. 29, 1997); *Cespedes v. Coughlin*, 956 F.Supp. 454, 472–75 (S.D.N.Y.1997).

■ I turn now to the issue of whether Husbands' 180 days in SHU constituted an atypical and significant hardship in relation to the ordinary incidents of prison life and, therefore, implicated a liberty interest. I find, as discussed below, that Husbands' SHU confinement did not present a dramatic departure from the basic conditions of his confinement either in duration or restrictiveness of conditions. *Sandin*, 515 U.S. at 485; *Brooks*, 112 F.3d at 47–49.

Husbands was convicted of a drug-related crime and was serving an indeterminate sentence of six years to life at the time of the events in question. With respect to the duration of his confinement in SHU, Husbands spent six months there. Lengthy disciplinary confinement is prevalent in New York State prisons. In fact, New York law imposes no limit on the amount of SHU time that may be imposed for Tier III infractions. 7 NYCRR § 254.7(a)(1)(iii). As of March 17, 1997, there were 1,626 inmates in SHU for disciplinary reasons. Affidavit of Anthony J. Annucci ("Annucci Aff.") ¶ 24. Of those inmates, 28 had SHU sentences of 59 days or less; 129 had SHU sentences of 60–119 days; 127 had SHU sentences of 120–179 days; 545 had SHU sentences of 180–365 days; and 797 had SHU sentences exceeding 365 days. Annucci Aff. ¶ 24. These statistics suggest that lengthy confinement in SHU—for periods as long as or longer than Husbands' stay—is a normal element of the New York prison regime.

Further, in this Circuit, courts have ruled that lengthy periods of disciplinary confine-

ment do not impose "atypical and significant hardship" within the meaning of *Sandin*. *See e.g., Brooks*, 1997 WL 436750, at *4 (on remand) (no liberty interest in avoiding 180 days confinement); *Trice v. Clark*, 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996) (no liberty interest in avoiding 150 days confinement). Accordingly, I find that Husbands' confinement in SHU for six months, standing alone, does not present the type of atypical and significant deprivation in which a state may conceivably create a liberty interest. *Sandin*, 515 U.S. at 486.

■ With respect to the nature of the restrictions in SHU during that six month period, I do not find that these conditions imposed atypical and significant hardship in relation to the ordinary incidents of prison life. Special Housing Units consist of "single-occupancy cells grouped so as to provide separation from the general population." 7 NYCRR § 300.2(b). Inmates may be placed in SHU as a result of a disciplinary hearing, *id.* § 301.2(a), for administrative reasons, *id.* §§ 301.3, 301.4, for protective custody, *id.* § 301.5, for keeplock confinement, *id.* § 301.6, or for any other reason, *id.* § 301.7. All inmates placed in SHU experience essentially the same basic conditions of confinement.[1] For example, all SHU inmates are allowed two showers per week, *id.* § 304.5(a), and one hour of outdoor exercise per day, *id.* § 304.3. All inmates in SHU are entitled to unlimited legal visits and one non-legal visit per week. *Id.* § 302.2(j)(1)(I). All SHU inmates are allowed to receive and send privileged or personal correspondence. *Id.* § 302.2(I). All inmates in SHU have access

to counseling services on a daily basis. *Id.* § 304.10. All SHU inmates are given an opportunity to participate in a cell study program, to the extent possible based on overall behavioral adjustment. *Id.* § 304.11. Counselors, teachers, or other appropriate staff members may visit SHU inmates to provide assistance in this regard. *Id.* All inmates in SHU have daily access to sick call. *Id.* § 304.4(c). All SHU inmates are permitted to received books and periodicals from both the law library, *id.* § 304.7, and the general library, *id.* § 304.12. Therefore, the conditions of disciplinary confinement, with insignificant exceptions, essentially mirror those conditions imposed on inmates housed in SHU for administrative or other reasons.[2] *Sandin*, 515 U.S. at 486.

The conditions of confinement in SHU also are not dramatically different from those experienced in the general population. For example, as stated previously, all inmates in SHU are allowed one hour of outdoor exercise daily. *Id.* § 304.3. This is the same amount of time allotted for exercise to general population inmates, *id.* § 320.3(d)(2), and is in full compliance with constitutional requirements. *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985). SHU inmates are allowed a minimum of two showers per week, 7 NYCRR § 304.5(a), while general population inmates are allowed three showers per week, *id.* § 320.3(d)(1). SHU inmates are confined to their cells approximately twenty-three hours a day. General population inmates are confined to their cells approximately twelve hours a day during the week and even more on the weekends.[3] Annucci Aff. ¶¶ 17–18.

---

**1.** Given their unique status, protective custody inmates, however, receive certain additional privileges. 7 NYCRR § 330.4.

**2.** There are two minor exceptions worthy of note. First, disciplinary admissions must complete a thirty-day period of satisfactory adjustment before they are eligible for additional in-cell items and commissary privileges. 7 NYCRR §§ 303.1, 303.2, 303.3. SHU "administrative" admissions receive these privileges from the beginning of their confinement. *Id.* §§ 301.4(c), 301.6(g), 301.7(b). Second, non-disciplinary admissions have their status reviewed every seven days for the first two months and every thirty days thereafter. *Id.* § 301.4(d). This review evaluates the need for continued SHU confinement, but does

not affect the conditions of confinement in any way. Disciplinary admissions do not receive this review because they are serving a specific SHU sentence imposed as punishment for a disciplinary infraction. Accordingly, there is essentially no reason to review the "need" for continued confinement. I do not find that either of these exceptions is significant in determining whether lengthy disciplinary confinement constitutes atypical and significant hardship.

**3.** General population inmates usually spend their out-of-cell time at programs or at meals. While the inmates in SHU are unable to attend programs and meals, they do have an opportunity to participate in a cell study program and are provided with all of their meals in the SHU setting.

Thus, conditions at New York correctional facilities involve a significant amount of lock-down time even for inmates in the general population.

Further, the occasional imposition of conditions more restrictive than those typically encountered by the general prison population is an ordinary incident of prison life. For example, the Superintendent may confine an inmate "in a cell or room . . . for such period as may be necessary for maintenance of order and discipline." N.Y.Correct.Law § 137(6). The Superintendent also may detain inmates from the general prison population in their cells and suspend shower and exercise privileges at any time for the safety and security of the facility. 7 NYCRR § 320.3(d)(5). General population inmates' out-of-cell time also may be temporarily curtailed for non-disciplinary reasons, such as when: (1) inmates are in idle status because of the unavailability of programming or their refusal to program; (2) inmates are in the reception company at a new facility awaiting evaluation and assessment; and (3) inmates are unable to program for medical or mental health reasons. Annucci Aff. ¶ 25. Therefore, based on a comparison between inmates housed in SHU and those in general population, the state's action in placing Husbands in SHU for 180 days did not work a major disruption in his environment. *Sandin,* 515 U.S. at 486.

Husbands has not challenged any specific aspect of SHU and has failed to allege any facts that would support a finding that the conditions in SHU were different in any material respect from the basic conditions of his confinement. *Sims v. Artuz,* 1997 WL 527882, at * 10 (S.D.N.Y. Aug. 25, 1997). In short, the regime to which Husbands was subjected as a result of his disciplinary hearings—both in duration and degree of restriction—was within the range of confinement to be normally expected for one serving an indeterminate term of six years to life. *Sandin,* 515 U.S. at 487.

For the foregoing reasons, Husbands' SHU confinement does not give rise to a liberty interest sufficient to support a due process claim. Accordingly, Husbands' motion to amend the previous judgment of this Court which dismissed his Fourteenth Amendment due process claim is denied.

Likewise, Husbands' motion to amend this Court's previous judgment denying his motion to amend his complaint to add a retaliation claim is denied. As stated more fully in this Court's previous decision, there is no evidence that Husbands engaged in any activity protected by the First Amendment. Further, there is no evidence that defendant B. Lilac's actions did or could have prevented, inhibited, or impeded Husbands' right to petition for redress of his grievances. See *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988).

### CONCLUSION

For the foregoing reasons, Husbands' motion to amend this Court's March 26, 1997 judgment denying his motion to amend his complain, granting defendants' motion for summary judgment and dismissing the complaint is denied.

IT IS SO ORDERED.