Santiago **RAMIREZ**, Plaintiff,

v.

Michael **McGINNIS**, Defendant.

No. 87 Civ. 6004 (RLC).

United States District Court, S.D. New York.

July 27, 1999.

Sullivan & Cromwell, New York City, Penny Shane, of counsel, for Plaintiff.

Eliot Spitzer, Attorney General of the State of New York City, Rebecca Ann Durden, Assistant Attorney General, of counsel, for Defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Santiago Ramirez ("Ramirez") brought this action against defendant Michael McGinnis ("McGinnis") asserting a violation of his rights under the due process clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. Now before the court is defendant's motion for summary judgment, and plaintiff's cross-motion for summary judgment.

## BACKGROUND

Ramirez is currently, and was at all times pertinent, an inmate at Sing Sing Correctional Facility in Ossining, New York. He is serving a prison term of 22 years to life. On February 11, 1987, Ramirez was served with an inmate misbehavior report for possessing a pointed steel rod in his cell, a charge that he denied. A Tier Three Disciplinary Proceeding (the "Tier Three hearing"), with defendant McGinnis as the presiding officer, was subsequently held in February, 1987.

At the Tier Three hearing,[1] a corrections officer testified that a confidential infor-

---

1. New York conducts three types of disciplinary hearings for its inmates. Tier III hear-

mant (the "Informant") had told prison officials that plaintiff possessed contraband which could be used to assist in an escape. Ramirez, however, claimed that the officers who had searched his cell had planted the rod in retaliation for his filing of a grievance against another officer. Ramirez also alleged that he could establish that the Informant had placed the weapon in his cell.

As part of his defense, Ramirez requested that the Informant be called as a witness. McGinnis denied the request on the ground that the questions that Ramirez had proposed for the Informant were irrelevant. In addition, Ramirez claims that he attempted to call Sergeant DeZayas, the prison official who received the information from the Informant, as a witness. Plaintiff alleges that this request was also improperly denied by defendant. In a determination dated February 19, 1987, McGinnis found Ramirez guilty of possessing a contraband weapon and imposed a penalty of 60 days confinement to Sing Sing's Special Housing Unit ("SHU"), loss of telephone and commissary privileges for those 60 days, and loss of one month of "good time" credit.

On February 23, 1987, Ramirez appealed McGinnis' determination to the Special Housing/Inmate Disciplinary Program Office. Plaintiff's asserted basis for the appeal was McGinnis' refusal to call the Informant as a witness or to explain his refusal in a written statement. McGinnis' determination was affirmed on April 17, 1987. Plaintiff subsequently brought an Article 78 proceeding in New York State Supreme Court. On November 30, 1987, after Ramirez had served his 60 day sentence in SHU, the New York Supreme Court annulled McGinnis' determination on the ground that plaintiff's requests to hear testimony from the Informant and Sergeant DeZayas were improperly denied. Accordingly, the Court restored the "good time" credits lost by Ramirez, and

ordered that Ramirez be reinstated to the status he enjoyed prior to the Tier Three hearing. The decision was not appealed.

Ramirez commenced the instant action for compensatory and punitive damages, pursuant to 42 U.S.C. § 1983, on August 19, 1987. On February 21, 1992, defendant moved for summary judgment on the grounds that he enjoyed absolute immunity from the suit, and that his denial to call the requested witnesses did not violate plaintiff's due process rights. Plaintiff filed a cross-motion for partial summary judgment, asserting that the previous Article 78 proceeding in state court precluded litigation of issues previously determined. In a Report and Recommendation dated October 14, 1992, Magistrate Judge Sharon E. Grubin rejected defendant's absolute immunity defense, but recommended that defendant's summary judgment motion be granted because plaintiff had received a fair hearing. Magistrate Grubin also recommended that plaintiff's motion be denied, holding that the state court litigation did not have a preclusive effect on this federal action.

Ramirez timely filed objections to Magistrate Grubin's Report and Recommendation. In an Opinion and Order dated March 31, 1993, District Judge Mary Johnson Lowe adopted the Magistrate's recommendation that plaintiff's motion be denied. *See Ramirez v. Selsky,* 817 F.Supp. 1090 (S.D.N.Y.1993) (Lowe, J.). On the issue of defendant's summary judgment motion, Judge Lowe adopted the Magistrate's dismissal of defendant's absolute immunity defense. However, Judge Lowe declined to adopt the conclusion that there was no triable issue as to whether defendant violated Ramirez's due process rights. Accordingly, Judge Lowe denied both plaintiff's and defendant's motions for summary judgment, and set the matter down for trial.

ings concern the most serious violations and may result in unlimited Special Housing Unit confinement (up to the length of the sentence)

and recommended loss of "good time" credits.

On August 22, 1994, parties submitted their Joint Pre–Trial Order, and the court placed the case on its ready-trial calender. Before the case could come to trial, however, the United States Supreme Court issued its opinion in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that modified the analysis under which federal courts determine whether the inmate's segregated confinement implicates a liberty interest. On June 16, 1997, Judge Lowe ordered additional briefing on the issue of whether Ramirez's disciplinary confinement in SHU encroached upon a liberty interest under *Sandin,* and under *Miller v. Selsky,* 111 F.3d 7 (2d Cir.1997) (further explaining *Sandin* ), and *Brooks v. DiFasi,* 112 F.3d 46 (2d Cir.1997) (same).

On April 6, 1998, defendant filed a motion for summary judgment, pursuant to Rule 56, F.R. Civ. P., asserting that under *Sandin,* Ramirez could not establish a liberty interest. Plaintiff subsequently filed a cross-motion for partial summary judgment. Plaintiff also asserted that dismissal was unwarranted in light of defendant's failure to produce responsive documents in discovery. The case was reassigned to this court on April 14, 1999.

## DISCUSSION

### A. Summary Judgment Standard

Under Rule 56(c), F.R. Civ. P., summary judgment is rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." "[T]he substantive law will identify which facts are material ... [and] [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine issue of material fact exists rests on the party seeking summary judgment. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). Furthermore, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir. 1994). Thus, "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987). On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are any issues to be tried." *Chambers,* 43 F.3d at 36–37 (quoting *Donahue,* 834 F.2d at 58).

### B. Liberty Interest

An inmate alleging the violation of a liberty interest without procedural due process, pursuant to 42 U.S.C. § 1983, must first establish that he enjoyed a protected liberty interest. *See Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)). An inmate's liberty interests are typically derived from the Fourteenth Amendment due process clause or state statutes and regulations. *See id.* Interests arising directly under the due process clause are narrow in scope, protecting no more than " 'the most basic liberty interests in prisoners.' " *Id.* (quoting *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The due process clause standing alone "does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin,* 515 U.S. at 478, 115 S.Ct. 2293. Rather, the due process clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Id.* at 484, 115 S.Ct. 2293.

With regard to state-created liberty interests, the Supreme Court in *Sandin* refocused the inquiry from whether a

mandatory directive in a state statute or regulation created a liberty interest to the "nature of the deprivation" itself. *See Sandin,* 515 U.S. at 481–484, 115 S.Ct. 2293. *See also Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997) ("[D]istrict courts must examine the circumstances of a confinement to determine whether that confinement affected a liberty interest."). Therefore, to establish a liberty interest, an inmate is required meet the following two-part test: (1) the confinement or restraint must create an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293; and (2) prove that "the state has granted its inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint." *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

The Second Circuit has stated that *Sandin* "did not create a per se blanket rule that disciplinary confinement may never implicate a liberty interest." *Miller,* 111 F.3d at 9. Additionally, the Circuit has recently held that the Supreme Court's decision in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (holding that prisoner's claim challenging a disciplinary hearing procedure that necessarily implied the invalidity of loss of good time credits as not cognizable under 42 U.S.C. § 1983), does not bar a prisoner's § 1983 suit challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement. *See Jenkins v. Haubert,* 179 F.3d 19, 26 (2d Cir. 1999)

### a. Atypical and significant hardship

■ In order to determine whether a restraint or confinement constitutes an "atypical and significant hardship," the court must engage in extensive fact-finding with respect to the specific circumstances of plaintiff's punishment. *See Brooks,* 112 F.3d at 49 (2d Cir.1997) (remanding for additional fact-finding). *See also Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997) (remanding because plaintiff had no opportu-

nity to develop factual record on liberty interest issue). The factors that should be evaluated include: (1) "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions," *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998); and (2) the duration of the confinement. *See id.* Moreover, the court must focus on the degree and duration of the actual punishment, rather than the maximum potential penalty that the inmate faced in the disciplinary hearing. *See Scott v. Albury,* 156 F.3d 283, 287–88 (2d Cir.1998).

■ In determining the extent to which the conditions of the disciplinary segregation differ from ordinary prison conditions, the court must assess the terms of plaintiff's segregation, as well as the general conditions affecting the prisoner's quality of life such as "the revocation of telephone or mail privileges or the right to purchase items otherwise available to prisoners, and the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution." *Jenkins,* 179 F.3d 19, 27–28.

■ In the instant case, plaintiff asserts that his experience at SHU and subsequent deprivations he suffered due to defendant's determination, taken together, constitute an atypical and significant change in the conditions and experiences that typified prison life. The alleged deprivations directly resulting from his 60 day confinement in SHU include: the loss of any out-of-cell time beyond one hour per day; loss of all telephone contact with family members, even upon the death of a close family member; strict limitations on visits from family members, without regard to the family's particular need to grieve; the lack of recreational activities, including sports, games, weekly movies, television; the lack of current reading materials; no access to reading material beyond five books; no access to the commissary to purchase food or toiletries, despite the fact that he lost fifteen pounds while in

SHU; no access to a shower beyond the three, five minute showers allotted each week; no personal garments to protect against cold weather; and significantly less personal bodily integrity, as a result of the significantly greater use of pat frisks, including the touching of the groin, in connection with SHU inmate movement. Ramirez also states that in 1996, the Department of Corrections ("DOCS") had granted his request to be transferred to Sing Sing to participate in a paralegal training and certification program that was offered only at Sing Sing. According to plaintiff, placement in SHU prevented him from participating and completing the paralegal program, and from attending classes at Mercy College, where plaintiff was a student in the college's Prison Program. This resulted in a loss of the funds that Ramirez's family had invested in the educational programs, the work that Ramirez had done, and the benefits of the programs themselves. Plaintiff also notes that he had not had any disciplinary problems in the preceding three years, nor any significant disciplinary history in the three years before that, before defendant's determination.

Additionally, Ramirez claims that defendant's determination of guilt continued to have consequences after the completion of his sentence in SHU. In April, 1987, Ramirez states that he was placed in Involuntary Protective Custody ("IPC"). The conditions in IPC allegedly included twenty-one hour confinement, one hour of outdoor recreation, and two hours of indoor evening recreation. Furthermore, plaintiff asserts that an additional consequence of the guilty determination was his transfer to Attica Correctional Facility, and his inability to obtain a position as a Law Library Clerk due to his disciplinary history. Ramirez also claims that, despite the New York Supreme Court's decision annulling McGinnis' determination, DOCS personnel has informed him that his security status remains questionable. This has allegedly delayed plaintiff's placement in programs designed to promote inmates' transition and adjustment to release.

Defendant first disputes Ramirez's contention that he was provided with inadequate food and clothing, suffered from different, more limited, reading privileges, and that there were strict limitations on visits from his family members. McGinnis argues that under the 1987 regulations, inmates in SHU were given the same food, clothing, and reading privileges as inmates in the general population, see N.Y. Comp. Codes R. & Regs. tit. 7, § 303.3 (1987), and that there were no limitations on the number on nonlegal visits afforded to SHU inmates. See N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1987). McGinnis also asserts that under the *Anderson v. Coughlin*, 80 Civ. 3037, (Durden Aff., June 28, 1998, Ex. A) consent decree which was in effect in 1987, prisoners at the Sing Sing SHU were provided with outdoor recreational activities and access to a mini-law library. Lastly, McGinnis argues that even if Ramirez's allegations regarding the pat frisks, the termination of his participation in educational programs, and the infrequency of showers are true, such conditions did not constitute an atypical, significant hardship.

In determining a summary judgment motion, "the court is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact," *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir.1995) (collecting cases), and must draw all factual inferences in favor of the non-moving party, viewing the factual assertions in the affidavits, depositions, and exhibits in the light most favorable to the non-moving party. *See id.* Moreover, the fact that both parties have moved for summary judgment does not necessarily mean that summary judgment may properly be granted for either party. *See Association of Int'l Auto. Mfrs., Inc. v. Abrams*, 84 F.3d 602, 611 (2d Cir.1996).

The court concludes that there is a material issue of fact in dispute here, and that it would be improper to resolve through summary judgment the factual dispute about the actual conditions at the Sing Sing SHU in 1987. *See Wright v. Coughlin*, 132 F.3d at 138 (vacating district

court's summary judgment in favor of defendant on ground that the court improperly resolved the conflict between sides by crediting defendant's testimony). Therefore, summary judgment in favor of either party on the issue of whether Ramirez's placement in SHU worked "a major disruption in his environment," *Sandin*, 515 U.S. at 486, 115 S.Ct. 2293, is unwarranted.

■ Defendant suggests that the duration of Ramirez's confinement in SHU precludes the court from finding that plaintiff suffered from an atypical, significant hardship, especially in comparison with Ramirez's overall sentence of 22 years to life. Indeed, as defendant points out, a number of district courts within the Second Circuit have dismissed claims where the duration of the segregated confinement was less than one year. *See Jackson v. Johnson*, 15 F.Supp.2d 341, 362 n. 8 (S.D.N.Y.1998) (Kaplan, J.) (collecting cases). Chief Judge McAvoy of the Northern District of New York has gone so far as to conclude that "it now appears that any period of segregation of one year or less affords no protected liberty interest." *Polanco v. Allan*, 1996 WL 250237,*3 (N.D.N.Y. May 6, 1996). However, the Second Circuit has recently reaffirmed the principle that there is "no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship'...." *Jenkins*, 179 F.3d 19, 28. *See also Ayers v. Ryan*, 152 F.3d 77, 83 (2d Cir.1998) ("Whether or not a period of disciplinary confinement amounts to an atypical and significant hardship is a fact-intensive inquiry...."). Mindful of this principle, the court declines to hold that, as a matter of law, the duration of Ramirez's confinement necessarily precludes a finding of an atypical and significant hardship. *See, e.g., Scott*, 156 F.3d at 285–288 (remanding for further fact-finding where plaintiff was confined in keeplock for 60 days). Moreover, while the United States Supreme Court indicated in *Sandin* that the length of the inmate's overall sentence is relevant in determining whether "the conditions suffered [are] expected within the contour of the actual sentence imposed," *Sandin*, 515 U.S. at 486 n. 9, 115 S.Ct. 2293, the court cannot properly conclude on summary judgment that the "regime to which [Ramirez] was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected" for one serving a term of 22 years to life. *See id.* at 487, 115 S.Ct. 2293.

**b. New York State statutes and regulations**

■ Having found that Ramirez has created a triable issue of fact as to whether his confinement in SHU constituted an atypical and significant hardship, the court must now determine whether New York has granted its inmates a protected liberty interest in remaining free from disciplinary segregation. McGinnis argues that there is simply no New York State law that affords inmates an entitlement to be free from segregated confinement.

Defendant's argument, however, ignores the case law finding exactly such a state-created interest. *See, e.g., Sher v. Coughlin*, 739 F.2d 77, 81 (2d Cir.1984) ("The state statutes and regulations authorizing restrictive confinement as punishment upon a finding of a disciplinary infraction will invariably provide sufficient limitation on the discretion of prison officials to create a liberty interest."). *See also Gittens v. Lefevre*, 891 F.2d 38, 40 (2d Cir.1989) (holding that inmates have a liberty interest in remaining free from administrative keeplock). *Sandin* does not change the validity of these decisions; it simply limits due process protection to hardships that are also "atypical and significant." *See Gonzalez v. Coughlin*, 969 F.Supp. 256, 257 (S.D.N.Y.1997) (Stanton, J.) (rejecting defendants' argument that federal cases holding that New York prison regulations afford inmates a liberty interest in remaining free from segregated confinement are no longer good law after *Sandin* ); *Wright v. Miller*, 973 F.Supp. 390, 395 (S.D.N.Y. 1997) (Baer, J.) (same). *See also Lee v. Coughlin*, 26 F.Supp.2d 615, 632–33 (S.D.N.Y.1998) (Sotomayor, J.) (holding

that New York regulations limit the exercise of New York's discretion in placing prisoners in both punitive and non-punitive confinement). Therefore, the court finds that New York state regulations granted Ramirez a protected liberty interest from remaining free from disciplinary segregation in SHU.

## CONCLUSION

For the above stated reasons, defendant's motion for summary judgment is denied. Plaintiff's cross-motion for partial summary judgment is also denied. Parties shall submit a revised Joint Pre–Trial Order by August 20, 1999. Any remaining discovery disputes, if any, shall be addressed by letter to chambers by August 6, 1999.

**IT IS SO ORDERED.**