### Ralph DURRAN, Plaintiff,

v.

### Donald SELSKY, Director of Inmate Disciplinary Program D.O.C.S., et al., Defendants.

### No. 00–CV–6067L.

United States District Court, W.D. New York.

March 20, 2003.

Raphael Durran, Sing Sing Correctional Facility, Ossining, NY, Pro se.

Christopher Scott Anderson, The Anderson Law Firm, Rochester, NY, for Plaintiff.

Gary M. Levine, NYS Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### PROCEDURAL BACKGROUND

Plaintiff, Raphael Durran, appearing *pro se,* commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services, alleges that defendants violated his constitutional rights in a number of respects, ranging from assault, denial of medical care, due process violations in connection with a disciplinary hearing, and other acts, all of which oc-

curred while plaintiff was confined at Southport Correctional Facility ("Southport").

The original complaint named fourteen officials and employees of DOCS as defendants. On August 3, 2000, the Court issued a Decision and Order that, *inter alia, sua sponte* dismissed plaintiff's claims against six of those defendants, as well as plaintiff's claims against all defendants regarding false misbehavior reports and denial of adequate medical treatment. That left the following defendants remaining: Donald Selsky, Director of the DOCS Inmate Disciplinary Program; Southport Superintendent Michael McGinnis; Senior Correctional Counselor Richard Cerio; Lieutenant Alan Hager; and Correction Officers James Coleman, Dana Gridley, Daniel Morgan, and Herbert Williams.

On August 7, 2002, defendants Selsky, McGinnis, Hager and Cerio moved for summary judgment on all remaining claims against them, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The notice of motion (Docket # 32), the Court's scheduling order setting the return date (Docket # 40), and the so-called "*Irby* notice" sent by the Court to plaintiff (Docket # 41) informed plaintiff of the nature of a summary judgment motion, the requirements of Rule 56, and the consequences of failing adequately to respond to the motion. *See Irby v. New York City Transit Auth.,* 262 F.3d 412 (2d Cir.2001).

In a letter to the Court dated August 30, 2002, plaintiff requested that he be allowed "to conform the Complaint to the proof adduced at the Plaintiff's deposition," or in the alternative "to amend the Complaint in order to amplify the pleading as to defendant Richard Cerio." Docket # 42.

In a Decision and Order entered on October 15, 2002, the Court advised plaintiff that he had not adequately responded

to the summary judgment motion, and again informed him of the requirements of Rule 56. Docket # 43. The Court extended plaintiff's time to respond to the motion to November 12, 2002.

On November 2, 2002, the Court issued another Decision and Order, "recogniz[ing] that plaintiff may have been seeking an opportunity to amend his complaint" in his August 30 letter, and giving him until December 30, 2002 to file a motion to amend, along with a proposed amended complaint. Docket # 44.

On January 3, 2003, plaintiff filed a document captioned "Memorandum of Law in Support of 42 U.S.C. § 1983/Plaintiff's Amended Complaint."[1] Docket # 45. This comprises an exact copy of the original complaint (including plaintiff's previously-dismissed claims), plus a five-page addendum setting forth additional allegations concerning Cerio, together with several exhibits. In addition, although the body of the amended complaint lists all fourteen original defendants, the caption on the cover sheet lists only five: Cerio, Coleman, Gridley, Morgan, and Williams. It thus omits not only the defendants dismissed in the Court's August 3, 2000 Decision and Order, but also defendants Selsky, McGinnis, and Hager. No explanation for this omission is given.

## FACTUAL BACKGROUND

It is undisputed that on March 7, 1997, plaintiff was removed from his cell and temporarily taken to a shower room, while a search was conducted of his cell. A correction officer ("C.O.") had allegedly been assaulted with a knife or similar object by another inmate the day before, and a search was ordered of all cells in the area.

---

1. Despite the "Memorandum of Law" caption, the document cites no case law.

After his cell was searched, plaintiff was removed from the shower by C.O.s Gridley and Coleman to be escorted back to his cell, which was located on the floor below the shower room. Plaintiff alleges that while they were in the stairwell, Gridley and Coleman grabbed plaintiff and banged his head into the wall. They then pushed him down the stairs, where several other officers, including Morgan and Williams, were waiting. All the officers then proceeded to punch and kick plaintiff for some time. The officers then picked plaintiff up and carried him to a different shower room. Plaintiff subsequently received medical treatment for his injuries.

Plaintiff alleges that the reason for this assault was that he was friends with the inmate who had allegedly slashed a C.O. on March 6. He claims that the assault was in retaliation for the incident involving the other inmate.

Defendants admit that there was an altercation involving plaintiff and some of these officers, but they contend that plaintiff initiated it. Defendants allege that as Gridley and Coleman were escorting plaintiff back to his cell, plaintiff attempted to kick Coleman. The C.O.s then grabbed plaintiff's arms, but plaintiff began to struggle. The officers were eventually able to place leg irons on plaintiff, but he continued to struggle. They then picked him up and carried him to the other shower room, where he was placed without further incident.

Following this incident, plaintiff was issued a misbehavior ticket. A hearing was conducted by defendant Cerio, who found plaintiff guilty of assault on a staff member. Plaintiff was sentenced to 150 days in the Special Housing Unit ("SHU"), 60 days suspended, deferred for 180 days, meaning that plaintiff had to spend at least 90 days in SHU. Plaintiff's administrative appeal of Cerio's decision was denied by defendant Selsky on June 4, 1997.

Plaintiff alleges that his due process rights were violated in a number of ways in connection with the hearing before Cerio. He alleges, for example, that he was denied certain witnesses whom he had requested, and that the hearing was not timely held as required by New York State regulations.

## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *McKelvie v. Cooper*, 190 F.3d 58, 61 (2d Cir.1999). Where, as here, the plaintiff is proceeding *pro se*, the court will liberally construe the plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and "interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)).

"Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment." *Gittens v. Garlocks Sealing Technologies*, 19 F.Supp.2d 104, 110 (W.D.N.Y. 1998); *see also Gil v. Vogilano*, 131 F.Supp.2d 486, 491 (S.D.N.Y.2001) ("the leniency accorded pro se litigants 'is not without limits, and all normal rules of pleading are not absolutely suspended'") (quoting *Stinson v. Sheriff's Dep't*, 499 F.Supp. 259, 262 (S.D.N.Y.1980)). Thus, "*pro se* litigants who are properly notified of the consequences of failing to respond to a motion for summary judgment may not avoid the strictures" of Rule 56 if they

fail to respond properly. *Shabazz–Allah v. Guard Mgmt. Serv.*, No. 97 Civ. 8194, 1999 WL 123641, at *3 (S.D.N.Y. Mar.8, 1999) (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996)), *aff'd*, 201 F.3d 432, 1999 WL 1012402 (2d Cir.1999).

In the case at bar, plaintiff, after being repeatedly informed both by the moving party and by the Court of what he was required to do by Rule 56 in order properly to respond to defendants' motion, and of the consequences if he failed to do so, has not submitted a proper or adequate response. He has simply resubmitted his original complaint, with some additional allegations against defendant Cerio.

Even if plaintiff had failed to submit *any* response, however, summary judgment should not be "granted automatically." *Champion*, 76 F.3d at 486. Rather, summary judgment may be granted as long as the plaintiff has received notice that failure to file an opposition may result in dismissal of his case and the court is satisfied that the undisputed facts "show that the moving party is entitled to a judgment as a matter of law." *Id.* at 486 (quoting Fed. R.Civ.P. 56(c)); *Gittens*, 19 F.Supp.2d at 109. To put it another way, "even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir.2001).

In the instant case, it is difficult to tell precisely what plaintiff intended by filing his "memorandum"/amended complaint. It may be that, as indicated in his August 30 letter, plaintiff simply wants to "amplify" his allegations concerning Cerio. The fact that he named only five of the eight defendants remaining in this case in the caption, however, suggests that he may be

abandoning his claims against the other three.

Mindful of my obligation to construe plaintiff's pleadings liberally, however, I will assume that plaintiff did not intend to drop his claims against Selsky, McGinnis, and Hager. I will also determine whether defendants are entitled to summary judgment based on all the papers before me, including plaintiff's January 3 submission.

## II. Defendants' Motion

### A. Claim Against McGinnis

 Defendants contend that plaintiff's claims against McGinnis should be dismissed because plaintiff has failed to allege that McGinnis was personally involved in the alleged constitutional deprivations. I agree.

 "It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)); *see also Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir.2001). The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at

873; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

In the case at bar, there is no evidence that McGinnis had any involvement in the events giving rise to plaintiff's claims. Although the complaint alleges that McGinnis and others fabricated certain documents in order to "frame" plaintiff and "cover up the malfeasance and misconduct" of the C.O.s, Complaint at 19, that unsubstantiated assertion is not supported by any evidence in the record.[2]

McGinnis himself states in an affidavit that he did not participate, and was not involved in, any of the matters alleged by plaintiff.[3] Docket # 37. That assertion stands uncontradicted. Plaintiff testified at his deposition that he named McGinnis as a defendant simply because McGinnis "is the maximum authority in the facility." Affirmation of Gary M. Levine, Esq., (Docket # 39), Ex. A at 104. It is well established, however, that "[t]here is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Plaintiff must show that McGinnis was personally involved in the acts that allegedly violated plaintiff's constitutional rights, and he has not done so.

## B. Claim Against Hager

■ The basis for plaintiff's claim against defendant Hager is that Hager allegedly "failed to intervene" on plaintiff's behalf during the assault against plaintiff.

Complaint at 18. Defendants contend, however, that plaintiff has also failed to show personal involvement by Hager in the alleged deprivation.

It is true that a correctional officer has an affirmative duty to intercede on behalf of an inmate if the officer witnesses another officer assault the inmate in violation of the inmate's Eighth Amendment rights. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). There is no evidence here, though, that Hager did witness the alleged assault.

Hager states in his affidavit (Docket # 36) that he did not observe any incident involving plaintiff on March 7, 1997. At his deposition, plaintiff testified that he "saw [Hager] when [plaintiff] went outside" the stairway door, *i.e.,* after the assault ended. Levine Aff., Ex. A at 51, 53. He also stated that he "didn't see [Hager] doing anything," and that he did not know how long Hager had been standing there. *Id.* at 53. There is thus no evidence that Hager witnessed the alleged assault, and no showing of personal involvement on his part. Plaintiff's claim against Hager must therefore be dismissed.

## C. Claim Against Cerio

■ Plaintiff alleges that Cerio, who conducted the disciplinary hearing that led to plaintiff's ninety-day confinement in SHU, violated his constitutional right to due process in a number of respects. None of plaintiff's allegations, however, can support a claim against Cerio.

---

**2.** In addition, to the extent that plaintiff alleges that McGinnis was involved in preparing or issuing false misbehavior reports against plaintiff, that claim was dismissed by my August 3, 2000 Decision and Order.

**3.** McGinnis did sign a memorandum to plaintiff dated March 14, 1997, advising plaintiff that certain documents that plaintiff had requested could not be provided to plaintiff at

that time because they were not finalized. McGinnis stated that the documents would be provided to plaintiff at his disciplinary hearing. McGinnis Aff. Ex. B. Even interpreting plaintiff's claims "to raise the strongest arguments that they suggest," *McPherson,* 174 F.3d at 280, I find that this act by McGinnis cannot provide the basis for any constitutional claim.

 In evaluating an inmate's procedural due process claim with respect to confinement within prison, a court must consider " '(1) whether the plaintiff had a protected liberty interest in not being confined ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law.' " *Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (quoting *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997)). An inmate has a protected liberty interest in not being confined only if "the deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation." *Tellier,* 280 F.3d at 80 (quoting *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996)); *accord Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000).

 Although determining whether a particular confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), will involve factual determinations, *Tellier,* 280 F.3d at 80, "the ultimate issue of atypicality is one of law." *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999). Among the factors to be considered are "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998) (citing *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293).

While the Second Circuit has "not established a bright-line rule as to how lengthy a SHU confinement will be considered atypical and significant," *Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000), the court in *Sealey,* 197 F.3d at 589–90, held that confinement of 101 days in SHU did not meet

the *Sandin* standard. Although the court has left open the possibility that SHU confinement of less than 101 days could, depending on the particular conditions of that confinement, be shown to constitute an atypical and severe hardship, *see Colon v. Howard,* 215 F.3d 227, 232 n. 5 (2d Cir.2000), following *Sealey,* "courts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days or less, absent additional egregious circumstances, does not implicate a liberty interest." *Tookes v. Artuz,* No. 00 Civ. 4969, 2002 WL 1484391, at *3 (S.D.N.Y. July 11, 2002); *see also Colon,* 215 F.3d at 232 (instructing district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days") (footnote omitted); *Alvarado v. Kerrigan,* 152 F.Supp.2d at 355 ("the cases show a consensus in this Circuit that an inmate's confinement in the SHU for 101 days or less-without further deprivation-does not constitute an atypical or significant hardship"); *see, e.g., Baker v. Finn,* No. 00 Civ. 3886, 2001 WL 1338919, at *4 (S.D.N.Y. Oct.31, 2001) (136 days); *Jackson v. Johnson,* 15 F.Supp.2d 341, 361–62 (S.D.N.Y.1998) (99 days); *Husbands v. McClellan,* 990 F.Supp. 214, 216 (W.D.N.Y. 1998) (180 days).

In the case at bar, plaintiff has failed to show any circumstances, other than the length of his confinement, to show that his confinement in SHU for ninety days was in any way atypical or a significant hardship in relation to the ordinary incidents of prison life. The entire focus of his allegations is on the alleged due process violations in connection with the disciplinary hearing, not on the conditions of his confinement. Plaintiff has therefore not met the "atypical and significant hardship" standard of *Sandin,* and Cerio is entitled to summary judgment on this claim. *See Taylor v. Rodriguez,* 238 F.3d 188, 194 (2d

Cir.2001) (even though inmate plaintiff "did not receive the process that was due, he cannot succeed on his [due process] claims if he fails to establish a protected liberty interest").

### D. Claim Against Selsky

 Plaintiff alleges that defendant Selsky violated his due process rights by affirming Cerio's decision following the disciplinary hearing. *See* Complaint at 20. At his deposition, plaintiff testified that the basis for his claim against Selsky was plaintiff's belief that Selsky "denied [plaintiff's] appeal of this when [plaintiff] sent him evidence showing that [plaintiff] was definitely not guilty of" the charges against him. Levine Aff., Ex. A at 95.

Since plaintiff cannot make out a due process claim against Cerio, however, his claim against Selsky is equally groundless. *See Black v. Selsky,* 15 F.Supp.2d 311, 318 (W.D.N.Y.1998) ("because Black's claims against Ryan [the hearing officer] are meritless and Selsky's alleged wrongdoing was based on his affirming Ryan's determination, there is no basis for the claims against Selsky either"). Furthermore, there was clearly a sufficient basis for Selsky's determination to meet the "some evidence" standard of *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

### CONCLUSION

Defendant's motion for summary judgment (Docket # 32) is granted, and the complaint is dismissed as to defendants Donald Selsky, Michael McGinnis, Richard Cerio, and Alan Hager.

IT IS SO ORDERED.