Jose MADERA, Plaintiff,

v.

Glenn S. GOORD, Commissioner; Captain Craig C. Gummerson; Brian Smith, Correction Officer; R.J. Welch, Correction Officer, Defendants.

No. 6:97–CV–1894 (LEK/GJD).

United States District Court,
N.D. New York.

March 28, 2000.

Jose Madera, Marcy, NY, plaintiff pro se.

Hon. Eliot L. Spitzer, Attorney General of the State of New York, Albany, NY, Bruce J. Boivin, Assistant Attorney General, of counsel, for the defendants.

### *DECISION AND ORDER*

KAHN, District Judge.

This matter comes before the Court following a Report–Recommendation filed on 6 March 2000 by the Honorable Gustave J. DiBianco, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York.

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report–Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," Fed.R.Civ.P. 72(b), in compliance with L.R. 72.1(c). In the interval of at least 21 days since the Magistrate Judge filed the subject Report–Recommendation, no objections to it have been raised. Furthermore, after examining the record, the Court has determined that the Report–Recommendation is not subject to attack for plain error or manifest injustice. Therefore, the Court adopts the Report–Recommendation for the reasons stated therein.

Accordingly, it is hereby

ORDERED that the Report–Recommendation is **APPROVED** and **ADOPTED IN ITS ENTIRETY;** and

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is **GRANTED,** and the complaint is **DISMISSED IN ITS ENTIRETY;** and

IT IS FURTHER ORDERED that the Clerk is to **ENTER JUDGMENT FOR DEFENDANTS;** and

IT IS FURTHER ORDERED that this **CASE IS CLOSED,** and

IT IS FURTHER ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

### REPORT–RECOMMENDATION

DI BIANCO, United States Magistrate Judge.

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In the instant civil rights complaint, plaintiff alleges various constitutional violations as the result of a cell search and subsequent disciplinary hearing.

Plaintiff seeks substantial monetary relief.

Presently before the court is defendants' motion for summary judgment pursuant to FED.R.CIV.P. 56. (Docket # 18). For the

following reasons, this court will recommend granting defendants' motion.

## DISCUSSION

### 1. *Facts*

Plaintiff alleges that on April 14, 1997, defendant Smith searched plaintiff's cell and found heroin in a small packet covered with tape. Plaintiff alleges that defendant Smith did not handle the evidence properly, and did not leave the appropriate forms for contraband with plaintiff. Plaintiff alleges that defendant Smith violated State law in failing to follow the proper procedures for the seizure of contraband. Plaintiff states that the package of heroin was given to defendant Welch, but there was no indication of the "chain of custody" of the drugs. Plaintiff also claims that Sergeant Valentino ordered the search, but never signed the misbehavior report, also in violation of State rules and regulations.

Plaintiff was afforded a disciplinary hearing, conducted by defendant Gummerson. Plaintiff alleges that Gummerson should not have presided over the hearing because he had initially ordered Valentino to order the search, thus violating the rule that the hearing officer should not have been involved in the incident that forms the subject of the hearing. Plaintiff alleges that he was denied proper assistance with the hearing and was denied the appropriate documents to present a defense. Plaintiff states that he ultimately pled guilty to the charges because he believed that he could not obtain a fair determination. Plaintiff received 120 days of keeplock, with 30 days suspended and various privilege restrictions. Boivin Declaration, Exhibit A, Hearing Transcript at p. 11.

Plaintiff appealed the disciplinary determination notwithstanding his guilty plea and obtained a reversal of the finding and an expungement of his records based upon his argument that defendant Gummerson should not have been assigned as the hear-

ing officer. Boivin Declaration, Exhibit C at p. 2.

### 2. *Summary Judgment*

Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). All factual inferences must be drawn in favor of the nonmoving party. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citing *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir.1998)). In the case of a pro se plaintiff, the court must interpret the pleadings to " 'raise the strongest arguments that they suggest.' " *Id.* (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)).

### 3. *Respondeat Superior*

█ It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), and that the doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

█ In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation. A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id.* A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement of a supervisory official is said to exist if he or

she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

In the instant case, plaintiff has named Glenn Goord as a defendant. Defendant Goord is the Commissioner of the Department of Correctional Services. There are no allegations in the complaint that Commissioner Goord was in any way aware of either the search, plaintiff's hearing, or even the eventual disposition of the charge on appeal. In short, plaintiff has not alleged any way that this defendant could have been personally involved in the alleged deprivation, and the complaint may be dismissed as against defendant Goord.

### 4. *Due Process*

In order to succeed on a claim that an inmate was denied constitutional due process in a disciplinary hearing, the plaintiff must show that he was deprived a liberty interest without due process of law. *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir. 1996). Until the Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Second Circuit had held that an inmate did have a liberty interest in remaining free from disciplinary confinement in the Special Housing Unit, based upon the nature of the deprivation. *See McCann v. Coughlin,* 698 F.2d 112, 121 (2d Cir.1983). The only issue was whether the inmate had received the constitutionally required due process protection.

After *McCann,* the Supreme Court decided *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in which the court determined that a state could create a liberty interest through a statute or regulation by using language of unmistakably mandatory character, limiting the

discretion of the decision maker. *Id.* After *Hewitt,* the lower courts, as well as the Supreme Court, focused upon the language of the statute, rather than on the character of the deprivation. *See e.g. Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Hernandez v. Coughlin,* 18 F.3d 133 (2d Cir.) (finding no liberty interest after examining the regulations relating to the family reunion program); *Gittens v. LeFevre,* 891 F.2d 38, 41 (2d Cir.1989) (liberty interest in remaining free from keeplock based upon the language of the regulations).

After *Sandin,* in order to determine whether a liberty interest exists in addition to the statute, the court must examine the circumstances of the confinement and identify whether the deprivation is an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. 2293. The court must compare the nature of various types and lengths of confinement and identify with specificity the facts upon which the court's conclusion is based. *Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999).

In the instant case, plaintiff received a sentence of 120 days of keeplock confinement with 30 days suspended.[1] Defendants argue that a comparison of keeplock to other forms of confinement shows that plaintiff had no liberty interest in remaining free from such confinement for a period of 90 days because plaintiff did not suffer an "atypical and significant hardship." An inmate in keeplock remains in his own cell, receives outdoor recreation every day, may receive both legal and social visitors, may obtain material from the library, is allowed religious items, books, magazines and newspapers, and may enroll in cell study programs. Defendants' Memorandum of Law at p. 9 (citing 7 N.Y.C.R.R. §§ 301, 302, 304).

---

1. In *Gittens v. LeFevre,* the Second Circuit held that an inmate did have a liberty interest in remaining free from keeplock confinement. 891 F.2d at 41.

■ The Second Circuit has also held, however, that a *Sandin* analysis is not necessary if the inmate received all the constitutionally required process. *Bedoya v. Coughlin*, 91 F.3d at 352. As the court did in *Bedoya*, the undersigned concludes that whether or not plaintiff had a liberty interest in remaining free from keeplock, he received constitutionally adequate due process.

■ First, plaintiff alleges that there was a break in the chain of custody of the evidence because the chain of custody form indicates that the drugs were given to defendant Welch at 5:00 p.m. but were not tested until 6:20 p.m. Plaintiff claims that this shows a break in the chain of custody between 5:00 and 6:20. While it is true that due process requires a disciplinary body to establish a reasonably reliable chain of custody,[2] the documents in the instant case show that this was accomplished. Plaintiff has misinterpreted the form in question. The defendants have included the "Request for Test of Suspected Contraband Drugs" used in the instant case. Boivin Declaration, Exhibit B at p. 3. The portion of the form indicating chain of custody is at the bottom. This form shows that the drugs were given by B. Smith to R. Welch on April 14, 1997 at 5:00 p.m. *Id.* The form also indicates that at 6:30 p.m. R. Welch tested the substance and found that it tested positive for heroin. Finally, the form shows that R. Welch gave the substance to "Tier Evidence" at 7:00 p.m. on April 14, 1997.

The next page of Exhibit B is a written statement of the facts, indicating that after B. Smith recovered the suspected contraband, he gave it to R. Welch who then tested the substance. *Id.* at p. 4. The results were positive for .2 grams of heroin. The evidence was then placed in an evidence locker. *Id.* The fact that nothing happened to the substance between 5:00 p.m. and 6:30 p.m. when it was tested does not indicate a break in the chain of custody. It simply appears that R. Welch had

the evidence for one and one half hours prior to testing the substance. Thus, there is no evidence of a due process violation related to the chain of custody.

■ Plaintiff also alleges that Sergeant Valentino authorized the search but did not sign the misbehavior report as required in the rules. Even assuming that a violation of state procedure took place, the violation of state law alone does not rise to the level of a constitutional violation. *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). Plaintiff does not allege how Valentino's failure to sign a misbehavior report denied plaintiff due process.

■ Finally, plaintiff claims that defendant Gummerson violated state law by presiding over the disciplinary hearing when he was the officer who ordered the cell search in the first instance. Plaintiff succeeded on this argument on appeal of his disciplinary disposition. Due process requires that a prison disciplinary hearing be impartial. *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir.1994) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 n. 3 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). An impartial decision maker is one who does not prejudge the evidence and cannot say how he would evaluate evidence that he has not seen. *Patterson v. Coughlin*, 905 F.2d 564, 569–70 (2d Cir.1990). However, it has long been held that prison disciplinary hearing officers are not held to the same standard of neutrality as other types of adjudicators. *See Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir.1996) (citing *inter alia Russell*, 35 F.3d at 60; *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989)).

New York State regulations provide that a person who *actually witnessed* the incident; a person who was *directly involved in the incident;* the review officer who reviewed the misbehavior report, or a per-

2. *Soto v. Lord,* 693 F.Supp. 8, 19 (S.D.N.Y. 1988).

son who has investigated the incident may not be assigned as the hearing officer in a particular case. N.Y.Comp.Codes R. & Regs. tit. 7, § 254.1. In the instant case, the appellate officer found that because defendant Gummerson ordered the search, he was "involved in [the] investigation."

The district court in *Russell v. Coughlin* held that absent proof of actual bias, a violation of state regulations regarding the assignment of hearing officers did not rise to the level of a constitutional violation. *See Russell v. Coughlin,* 774 F.Supp. 189, 197 (S.D.N.Y.1991), *rev'd on other grounds,* 15 F.3d 219 (2d Cir.), *aff'd,* 35 F.3d 61 (2d Cir.1994). On appeal, the Second Circuit agreed that plaintiff had shown no actual bias, but based its decision on qualified immunity, holding that in the absence of Supreme Court or Second Circuit precedent prescribing a right to have a separate review and hearing officer, the defendant would not be deprived of qualified immunity.[3] *Russell,* 35 F.3d at 60. The same has been held for an individual who assumed both the role of an investigating officer and a hearing officer. *Blackshear v. Coughlin,* No. 93–CV–971, 1995 U.S. Dist. LEXIS 21945, *16–18 (N.D.N.Y. Mar. 8, 1995) (Report–Recommendation), *adopted,* 1996 U.S. Dist. LEXIS 22081 (N.D.N.Y. Jan. 17, 1996).

In the instant case, while the record shows that defendant Gummerson ordered the search, he was not *directly* involved in the search or its execution. Defendant Gummerson ordered Valentino to have plaintiff's cell searched, and Officer Smith actually conducted the search. In fact, the actual incident was even further removed from defendant Gummerson's order to search the plaintiff's cell. The facts of the incident are outlined in the defendants' exhibits. Boivin Declaration, Exhibit B at p. 4. Officer Smith had been told to search the cell by Valentino. When Officer Smith approached the cell and told plaintiff to "step out for a frisk," another inmate attempted to block Officer Smith's entrance and plaintiff attempted to flush an object down the toilet. Officer Smith was able to tackle plaintiff and prevent him from flushing the package down the toilet. Apart from the order to search the cell, defendant Gummerson had no involvement in the incident. Based upon the intervening facts, this court finds that plaintiff has not shown sufficient conflict by defendant Gummerson to rise to the level of the bias required for a constitutional violation. As stated above, the violation of state regulations alone does not rise to the level of a constitutional violation.[4] In any event, the defendant would be entitled to qualified immunity based upon the lack of an established constitutional right.

*Silva v. Sanford,* No. 91 Civ. 1776, 1994 WL 455170, 1994 U.S.Dist. LEXIS 11568 (S.D.N.Y. Aug. 18, 1994) is distinguishable from the instant case. In *Silva,* the hearing officer was actually involved in the investigation of the incident *and* had told someone *before the hearing began* the punishment that he would be imposing on plaintiff. There was a clear showing on "actual bias," even though the judge in *Silva* had questioned the necessity of such a showing.

The court also notes that in the instant case, plaintiff pled guilty to the charges. Although he argued in his administrative appeal and before this court that he pled guilty because he believed that he could not get a fair consideration, at the disciplinary hearing, he stated that "there were

---

**3.** Qualified immunity protects defendants from liability for acts which do not violate a clearly established constitutional right of which a reasonable defendant would have known. *Scotto v. Almenas,* 143 F.3d 105, 110 (2d Cir.1998) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 810, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

**4.** Plaintiff also brings this claim purportedly under the Sixth Amendment, however, he does not allege how any Sixth Amendment right, apart from his alleged due process rights was violated.

a few errors made that [he] could have ... [appealed] ... but [he wanted] to be honest with ... [himself] ... and declare myself guilty." Boivin Declaration, Exhibit A, Hearing Transcript at 9. Defendant Gummerson did not even have the opportunity to show bias since plaintiff chose to plead guilty. It was not defendant Gummerson's alleged bias that caused plaintiff the injury (keeplock) that he seeks to have redressed in this action.[5]

### 5. *Fourth Amendment*

Plaintiff also attempts to bring a Fourth Amendment claim for illegal search. The court would simply point out that an inmate has no expectation of privacy in his cell, and thus, any Fourth Amendment claim must fail. *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

### 6. *False Misbehavior Report*

In plaintiff's statement of facts, he alleges that the misbehavior report was a "fabrication." [6] Without more, an inmate has no constitutional right to be free from false accusations. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). Additionally, the record is clear from plaintiff's own statements that the report was *not* a *fabrication.*

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the defendants' motion for summary judgment (docket # 18) be **GRANTED,** and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

March 6, 2000.

---

**5.** The court is not making a waiver analysis by this statement. The undersigned is merely noting that there is no showing of actual bias on the record.

**6.** Plaintiff's statement of facts is a copy of his administrative appeal which he attached to his federal complaint.