Roberto RIVERA, Plaintiff,

v.

Lieutenant J. WOHLRAB., and C.O. Richard Holmes, Defendants.

No. 99 CIV. 9881(VM).

United States District Court, S.D. New York.

Nov. 6, 2002.

Roberto Rivera, Moravia, NY, pro se.

David Camuzo, Eliot Spitzer, Attorney General, State of NY, New York City, for Defendant.

### DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff Roberto Rivera ("Rivera"), proceeding *pro se*, brings this action under 42 U.S.C. § 1983 (" § 1983") claiming violations of his constitutional rights under the due process clause of the Fourteenth Amendment of the United States Constitution. Rivera is seeking punitive damages, as well as injunctive and declaratory relief. Defendants, James Wohlrab ("Wohlrab"), a Corrections Lieutenant employed by the

Commissioner of the New York Department of Corrections ("DOCS"), and Richard Holmes ("Holmes"), a Corrections Sargent employed by DOCS (collectively, "Defendants"), have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing the claims against them. By Order dated October 31, 2002 the Court granted the motion in its entirety, and indicated that its reasons would be detailed in a subsequent decision. Accordingly, the Order of October 31, 2002 is amended to incorporate the discussion set forth below.

## I. BACKGROUND [1]

On August 29, 1999, Rivera, an inmate at Downstate Correctional Facility ("Downstate"), was ordered to provide a urine sample to Holmes. Another Downstate officer, identified as Capt. Many ("Many") in the Request for Urinalysis form, was informed by a confidential informant that Rivera was using a controlled substance. Many therefore ordered the urinalysis test. On August 29, 1996, Rivera's urine sample was tested twice for controlled substances. Both the initial test and the subsequent test yielded positive results for marijuana.

After obtaining the two positive readings for marijuana, Holmes, in accordance with the New York Department of Correctional Services ("DOCS") Directive 4937, issued a misbehavior report charging Rivera with violating DOCS Disciplinary Rule 133.12 (use, sale or exchange of narcotics, narcotic paraphernalia, or a controlled substance).

A tier III disciplinary hearing on the charges against Rivera commenced on September 4, 1996 and concluded on September 10, 1996. Lieutenant J. Wohlrab ("Wohlrab") presided as the hearing officer. During the proceedings, Rivera requested two witnesses, Holmes and the confidential informant. Wohlrab only permitted Rivera to question Holmes.

On September 10, 1996, Wohlrab issued a written decision finding Rivera guilty of the charge against him based upon the written report and testimony of Holmes and the two positive test results for marijuana.

Rivera was sentenced to six months keeplock confinement, as well as six months loss of packages, commissary and phone privileges. The Director of Special Housing and Inmate Disciplinary Programs, Donald Selsky, modified the sentence on November 5, 1996 to ninety days keeplock confinement.

Rivera alleges that his Fourteenth Amendment due process rights were violated by the drug testing procedure and during the course of the disciplinary hearing because: (i) Holmes performed both tests of his urine sample in violation of state regulations that mandate different testers unless a second tester is unavailable; (ii) the urinalysis Chain of Custody, the Urinalysis Check Sheet/Continuity, and the Daily Work Sheet forms were not filled out appropriately, reflecting an improper failure to freeze urine samples, as

---

1. The factual summary that follows derives primarily from Rivera's Complaint and accompanying exhibits attached thereto ("Compl."), Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, dated January 2, 2002 ("Def.'s Mem.") and accompanying exhibits and affidavits. Except where specifically referenced, no further citation to these sources will be made. Rivera's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated September 29 ("Pl.'s Mem.") was received on October 7, 2002, one week after the deadline for its receipt, after numerous extensions were granted by this Court. In any event, in consideration of the *pro se,* imprisoned status of Rivera, the Court considers Pl.'s Mem. when appropriate.

well as deficiencies in chain of custody requirements; (iii) the misbehavior report is "invalid" because "it does not substantiate or support the body of the report"; (iv) the punishment issued by Wohlrab was severe and excessive; (v) Wohlrab did not allow Rivera to question Holmes to the extent that Rivera requested; and (vi) Wohlrab denied Rivera's request to examine the confidential informant at his hearing. Defendants argue that Rivera's confinement did not deprive him of a liberty interest sufficient to warrant due process protections, or, in the alternative, that Rivera's allegations do not rise to the level due process violations as a matter of law. Finally, Defendants argue that, in any event, they are protected by the doctrine of qualified immunity from being held personally responsible from the alleged violations.

## II. *DISCUSSION*

### A. *SUMMARY JUDGMENT STANDARD*

To grant summary judgment, the court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, the dispute about a material fact is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49, 106 S.Ct. 2505 (citing *Adickes v. SH. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). To defeat the motion, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This is particularly true for those issues on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Although the same standards of summary judgment apply when a *pro se* litigant is involved, the *pro se* litigant should be given special latitude in responding to a summary judgment motion. *See McPherson v. Coombe,* 174 F.3d 276, 279 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' ") (quoting *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994)).

### B. *LIBERTY INTEREST*

Rivera claims that his due process rights were violated at his disciplinary hearing, which resulted in a sentence of 90 days of keeplock confinement, as well as the loss of various privileges, including packages, commissary and telephone. Defendants argue that the punishment issued to Rivera, as a matter of law and uncontested fact, does not constitute the deprivation of a liberty interest sufficient to entitle Rivera to bring an action under § 1983 for a constitutional due process violation. Because the parties' representations concerning the conditions surrounding Rivera's keeplock confinement are drastically different, and since under the summary judgment standard the Court must resolve questions of fact in favor of Rivera, the Court can not, at this time, determine that Rivera's punishment did not deprive him of a liberty interest.

To establish a due process violation, "it is necessary to prove that the state has

created a protected liberty interest and that the process due was denied." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996)). In determining when prisoners possess a protected liberty interest entitling them to due process in prison disciplinary proceedings, the Supreme Court in *Sandin v. Conner* found that, although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause, these interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 483–484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

■ Following *Sandin*, the Second Circuit articulated a two-part test governing due process challenges to disciplinary hearings [2]: "To prevail, [the plaintiff] must establish both that the confinement or restraint creates an 'atypical and significant hardship' under *Sandin*, and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996). Factors bearing on the "atypical and significant" finding are: (1) the effect of disciplinary action on the length of prison confinement, (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation imposed compared to discretionary confinements. *See Sandin*, 515 U.S. at 485–486, 115 S.Ct. 2293. "In other words, actions under the

due process clause are reserved for prisoners enduring a hardship that is substantially more grave than hardships [inmates] would be likely to endure simply as a consequence of the ordinary administration of the prison." *Welch v. Bartlett*, 196 F.3d 389, 392 (1999).

In assessing the nature and duration of a prisoner's confinement, the Second Circuit did not issue a bright-line rule delineating when a deprivation rises to the level of the *Sandin* analysis. *See Colon v. Howard*, 215 F.3d 227, 231–232 (2d Cir.2000). Rather, the Second Circuit has repeatedly made clear that district courts are to undertake extensive fact-finding in determining whether a liberty interest has been affected. *Jackson v. Johnson*, 15 F.Supp.2d 341, 345–346 (1998) (citing *Brooks v. DiFasi*, 112 F.3d 46 (2d Cir. 1997) (remanding for findings on the length of the disciplinary confinement, the restrictiveness of the keeplock, and the prevailing conditions in administrative confinement and in the prison at large); *Miller v. Selsky*, 111 F.3d 7 (2d Cir.1997) (same); *Sealey v. Giltner*, 116 F.3d 47, 51–52 (2d Cir.1997) (remanding for specific findings on conditions of confinement)) (additional citations omitted).

■ While it may be true, as Defendants contend, that where "the facts regarding conditions and duration of confinement are undisputed, it is appropriate for the court to decide the *Sandin* issue as a matter of law," *Williams v. Goord*, 111 F.Supp.2d 280, 289 (S.D.N.Y.2000), this is not the case here. Defendants allege that Rivera's ninety day keeplock confinement "most closely resembles that of an inmate in general population." (Def.'s Mem. at 8–9.) In support of this characterization,

---

2. Defendants challenge only the application of the second part of this test, that Rivera's punishment was not "atypical and signifi-

cant"; and therefore, it is the second part of the test that the Court will address.

Defendants indicate that inmates in keeplock confinement are permitted to leave their cells for showers, visitation, legal visits, etc., and are entitled to three showers per week and are kept in their own cells. (*Id.;* Tracy Aff. ¶¶ 7, 8, 10.)

Rivera, on the other hand, alleges that as part of his keeplock confinement, he was not kept in his own cell but transferred to the Special Housing Unit ("SHU") and that the SHU conditions were significantly inferior to those conditions enjoyed by the general inmate population. (*See* Compl. at 43–44.)

Accepting Rivera's allegations for purposes of the motion for summary judgment, as the Court is obligated to do, Rivera states an issue of material fact as to whether the conditions and duration of his ninety-day keeplock confinement created the deprivation of a liberty interest sufficient to state a cause of action under the due process clause. *See Welch,* 196 F.3d at 393. The durational guidelines pertaining to SHU confinement offered in *Colon* and urged by Defendants, while tempting in their simplicity, can not be used as a rule of thumb without a proper factual inquiry. 215 F.3d at 231 (characterizing sentences of 125–288 days as "relatively long," 101–305 as moderate sentences requiring a factual record, and less than 101 days of SHU confinement as likely not to constitute atypical and significant hardship). Useful guidance that such durational guidelines can not be taken for granted when material facts are in dispute is the Second Circuit's decision in *Welch,* 196 F.3d at 394, in which the court held that fact questions existed as to whether a sentence of ninety days of SHU confinement constituted atypical and significant deprivation. Therefore, Defendants' theory that Rivera failed to state a claim of a constitutional dimension cannot serve as a

proper basis for summary judgment under the circumstances of this case.

## C. DUE PROCESS OF HEARING

■ However, even assuming for the purposes of Defendants' summary judgment motion that Rivera's keeplock confinement rises to the level of a deprivation sufficient to warrant due process entitling him to the limited due process safeguards outlined in *Wolff v. McDonnell,* 418 U.S. 539, 563–567, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1975), and *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), as a matter of law and uncontested fact, Rivera's disciplinary hearing fully complied with the dictates of the due process clause. Therefore, whether or not Rivera was deprived of a liberty interest, Defendants are entitled to summary judgment.

Rivera alleges that the procedures surrounding the testing of his urine sample violated his due process rights. Specifically, he contends that Wohlrab violated various state laws and prison directives regulating the testing of urine samples. First, Rivera contends that Holmes violated the state law under Title 7 N.Y.C.R.R. § 1020.4(e)(v)(iv) and prison regulations when he performed both urinalysis tests instead of arranging for the second test to be done by another prison official. (Compl. ¶ 24.) Second, Rivera contends that Holmes failed to follow prison regulations mandating careful attention to the chain of custody of urine samples as reflected in improprieties in the forms documenting his urinalysis test. (Compl. ¶ 43.) Rivera also claims that the impropriety in the forms demonstrates a failure to refrigerate the urine sample after two hours as required by prison regulations. (Compl. at 23.) Therefore, Rivera claims that because of these infractions, Wohlrab imper-

missibly admitted and relied upon the drug test results.

■ Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim. *Hyman v. Holder,* No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y.2001). Similarly, violations of state law procedural requirements do not alone constitute a deprivation of due process since "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir.1990). These infractions may give rise to state law claims, but do not, by themselves, constitute due process violations of a constitutional nature. Thus, a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law; rather, in order to prevail on a § 1983 claim, the allegations asserted must constitute violations of constitutional due process standards. *See Hyman,* 2001 WL 262665, at *6. ("Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles") (citing *Doe v. Connecticut Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) (other citations omitted).

In setting forth the federal constitutional requirements of due process with respect to prison hearings in *Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 455–456, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court determined that in order to comport with due process, the disposition of the prison hearing officer must be supported by "some evidence." *See also Gaston v. Coughlin,* 249 F.3d 156, 163 (2d Cir.2001). The Supreme Court in *Hill* described the requisite amount of evi-

dence as a "modicum of evidence" and expressly declined "to adopt a more stringent evidentiary standard" reasoning that "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." 472 U.S. at 450, 456, 105 S.Ct. 2768. Determining whether the "some evidence" standard has been satisfied does not "require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion." *Id.* at 455, 105 S.Ct. 2768.

Therefore, the relevant inquiry in the matter at hand is whether there was sufficient evidence in the record, regardless of any procedural inconsistencies or violations, to find Rivera guilty of drug use at his disciplinary hearing. Courts have explicitly recognized that "due process is not synonymous with a requirement of scientific exactitude or error-free procedure." *Peranzo v. Coughlin,* 608 F.Supp. 1504, 1507 (S.D.N.Y.1985) (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. at 7 (1979)).

Wohlrab found Rivera guilty based upon the written reports and testimony of Holmes and the two positive test results for a controlled substance on the initial and confirmatory tests. (Affidavit of David Camuzo in Support of Defendants' Motion for Summary Judgment, dated December 28, 2001 ("Camuzo Aff.") Ex. D., Ex. M. at 60–61.) This evidence satisfies the "modicum of evidence" standard set forth in *Hill.*

First, drug test results have been determined, even on their own, to constitute sufficient evidence of guilt of drug use in prison disciplinary hearings. *Peranzo v.*

*Coughlin,* 850 F.2d 125, 125 (2d Cir.1988). In the context of disciplinary proceedings commenced as a result of urinalysis testing, the Second Circuit has observed that the "[EMIT] testing procedure—and initial test and a subsequent confirming test—has an accuracy of at least 98%." *Id.* Based upon the reliability of the testing procedures, the "use of the test results may be relied upon as sufficient evidence to warrant prison discipline under the standards of *Superintendent v. Hill.*" *Id.* Therefore, drug test results are considered valid evidence on which to base a disciplinary decision. *See Peranzo,* 675 F.Supp. 102, 105 (S.D.N.Y.1987); *Bolanos v. Coughlin,* No. 91 Civ. 5330, 1993 WL 762112, at *21 (S.D.N.Y. Oct.15, 1993) (one test of white powder which produced positive test result for controlled substance was sufficient evidence to support hearing officer's decision).

Furthermore, the alleged improprieties in the urinalysis procedure and documentation did not render the results of the drug test impermissible at Rivera's disciplinary hearing. It was Rivera's obligation and right to have contested the drug results and to bring any problems in the procedure to the attention of Wohlrab at his disciplinary hearing. *Wolff,* 418 U.S. at 566–567, 94 S.Ct. 2963. But, for purposes of a § 1983 constitutional claim brought in this Court, the alleged prison regulation and state law infractions do not invalidate Wohlrab's decision on due process grounds—Wohlrab is entitled to discount Rivera's defense, namely his concerns about infractions that occurred during his urinalysis test, and to rely on the test results as well as Holmes's testimony in finding Rivera guilty. *Cf. Freeman v.*

*Rideout,* 808 F.2d 949, 951–952 (2d Cir. 1986) (a fair hearing, conforming to the due process standards of *Wolff,* would "cure" a constitutional violation otherwise resulting from a false accusation).

While there is case law indicating that the due process clause requires a disciplinary body to establish a reasonably reliable chain of custody of the urine sample, *Soto v. Lord,* 693 F.Supp. 8, 19 (S.D.N.Y.1988); *Madera v. Goord,* 103 F.Supp.2d 536, 540 (N.D.N.Y.2000), the evidence in this case shows that this procedure was followed. Despite Rivera's assertions that the chain of custody was incomplete, Holmes's testimony, as well as the entirety of the documentary evidence in the urinalysis forms, demonstrates that a reasonably established chain of custody for the urine sample does exist. (*See* Affidavit of Richard Holmes in Support of Defendants' Motion for Summary Judgment, dated December 20, 2001 ("Holmes Aff.") ¶¶ 9–24; Camuzo Aff. Ex. E, D at 33–34, 40–41.) In particular, the Urinalysis Procedure forms, (Camuzo Aff. Ex. E, F), are meticulously completed and definitively establish the required chain of custody. The Urinalysis Procedure forms indicate the time and date the samples were taken, the time and date of both tests, and all required signatures indicating who the testers and handlers were. (*Id.*) Thereby, the omissions complained of by Rivera in the Request for Uranalysis Test form were accounted for in the Urinalysis Procedure forms. Again, while it is no doubt important that all disciplinary procedure forms be completed flawlessly, such improprieties do not rise to the level of a constitutional violation.[3]

---

**3.** Rivera also complains of the failure to report an alleged "sixth sample." (Pl.'s Mem. at 4.) The Court does not see the relevance of a purported sixth sample that was not reported, when Rivera's samples were found positive for marijuana and duly reported. Because another inmate's sample was not reported, for whatever reason, does not disqualify Rivera's sample.

■ Rivera also alleges that his due process rights were violated because the misbehavior report is "invalid" in that "it does not substantiate or support the body of the report." (Compl. at 22.) According to *Wolff*, due process requires that 24 hours advanced written notice of the charges against an inmate be given prior to any disciplinary action. 418 U.S. at 563–564, 94 S.Ct. 2963. Furthermore, the content of the notice should be " 'specific as to the misconduct with which the inmate is charged' [in order] to inform the inmate of what he is accused of doing." *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir.2001) (citing *McKinnon v. Patterson*, 568 F.2d 930, 940 n. 11 (2d Cir.1977)).

Therefore, the misbehavior report delivered to Rivera on August 30, 1996, five days before the hearing began on September 4, 1996, was sufficiently specific advance notice to Rivera that he was being charged with drug use based on a urinalysis test. (Camuzo Aff. Ex. H.) The purpose of these procedural safeguards is to allow the accused to review the charges and prepare a defense; it need not, as Rivera contends, be in and of itself sufficient to find the inmate guilty or to substantiate the charges.

■ Rivera also alleges that Wohlrab violated his due process rights by not allowing Rivera to question Holmes to the extent he desired. While inmates do have the right to question witnesses at their disciplinary hearings, that right is not unlimited and its contours are under the discretion of prison officials: "Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff*, 418 U.S. at 566, 94

S.Ct. 2963. Furthermore, the Supreme Court in *Wolff* explained that "[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators... [w]e must balance the inmates's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required." *Id.; see also Scott v. Kelly*, 962 F.2d 145, 147 (2d Cir.1992) (request for witnesses "can be denied on the basis of irrelevance or lack of necessity"); *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.1991).

Rivera did have an opportunity to question Holmes, but he did not have the unlimited right to question him for as long as he wished. Holmes testified at length about the urinalysis procedures and the forms he was required to complete. (*See* Camuzo Aff. Ex. D at 20–51.) Wohlrab was well within his rights to indicate that he was already satisfied with the questioning that had ensued concerning the chain of custody of the urine sample and that any further testimony would be redundant.

■ Rivera also claims that Wohlrab violated his due process rights by issuing a sentence that was harsh, severe, excessive and not appropriate to the charge. (Compl. at 27.) Absent a clear showing of gross abuse, a prison authority's judgment in ordering confinement should prevail and will not give rise to a cause of action under § 1983. *Anderson v. Coughlin*, 700 F.2d 37, 44 (2d Cir.1983). Where, as here, there was sufficient evidence of the prisoner's guilt, there is no basis for this Court to find that the punishment imposed was in any manner grossly abusive based merely on Rivera's conclusory assertion. *See France v. Coughlin*, No. 85 Civ. 6347, 1987 WL 10724, at *5 (S.D.N.Y. May 4, 1987). Sentences of comparable magnitudes for similar violations have been routinely sustained by the courts. *See, e.g.,*

*Rosario v. Selsky,* No. 94 Civ. 6872, 1995 WL 764178, at *5 (S.D.N.Y. Dec.28, 1995) (dismissing a § 1983 claim attacking a disciplinary hearing that resulted in a sentence of 120 months SHU confinement for drug use charges for failure to state a liberty interest warranting .due process protections).

■ Finally, Rivera alleges that Wohlrab's failure to allow him to question the confidential informant violated his due process rights. Rivera does not have a due process right to cross examine a confidential informant. Citing concerns of judicial economy within the prison disciplinary setting and concerns for the safety of such adverse witnesses, the Supreme Court has held that "the Constitution should not be read to impose [inmate cross-examination of adverse witnesses] at the present time.... [A]dequate bases for decision in prison disciplinary cases can be arrived at without cross-examination." *Wolff,* 418 U.S. at 567–569, 94 S.Ct. 2963; *Rodriguez v. Tippy,* No. 93 Civ. 1212, 1996 WL 550384, at *3 (N.D.N.Y. Sept. 25, 1996); *Guillen v. Tierney,* No. 93 Civ. 8853, 1995 WL 479406, at *4 (S.D.N.Y. Aug.11, 1995).

Furthermore, the Second Circuit has not determined whether an inmate has a right to an independent assessment of the credibility of confidential informants and a record of that assessment. *Gaston v. Coughlin,* 249 F.3d 156, 163 (2d Cir.2001); *Richardson v. Selsky,* 5 F.3d 616, 622 (2d Cir.1993). In any event, even assuming that such a right existed, the Second Circuit has held that the "some evidence" standard in *Hill* would be met where the only evidence was supplied by a confidential informant, "as long as there has been some examination of indicia relevant to [the informant's] credibility." *Giakoumelos v. Coughlin,* 88 F.3d 56, 61 (2d Cir. 1996) (internal quotation markets omitted)

(citing *Russell v. Scully,* 15 F.3d 219, 223 (2d Cir.1993)).

■ In this case, under the standard outlined in *Giakoumelos,* the positive drug test results constitute adequate support to substantiate the credibility of the confidential informant. In addition, since the hearing officer's obligation to conduct an independent assessment of the confidential informant has not been established in this district, the Defendants are protected by the doctrine of qualified immunity. Under this doctrine, government officials, including prison corrections officers, are shielded from civil damages liability provided that their actions are discretionary in nature and do not violate a clearly established statutory or constitutional right of which a reasonable official comparably placed would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In conclusion, Rivera has not set forth facts or allegations that constitute a violation of the limited due process protections afforded inmates in disciplinary proceedings. Therefore, Defendants' motion for summary judgement is granted.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated October 31, 2002 is amended to incorporate the discussion set forth above; and it is further

**ORDERED** that Defendants' motion for summary judgment is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**