Dyan JONES–HEIM, Plaintiff–Appellant,

v.

Constance REED; Paul M. Schults; Dominic Gutierrez; Hogan; Arnold; Lopez; Seli; Diehl; Thompson, Dr., Defendants–Appellees.

No. 05–15338.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 2007.

Filed June 18, 2007.

Dyan Jones–Heim, Bellingham, WA, pro se.

Alex Tse, USSF–Office of the U.S. Attorney, San Francisco, CA, for Defendants–Appellees.

Before: PREGERSON and IKUTA, Circuit Judges, and MOSKOWITZ *, District Judge.

## MEMORANDUM **

Plaintiff Dyan Jones–Heim appeals the district court's decision granting Defendants' motion for summary judgment. We review *de novo* the district court's order granting summary judgment. *See Long v. County of Los Angeles,* 442 F.3d 1178, 1184–85 (9th Cir.2006). We apply the same standard under Federal Rule of Civil Procedure 56(c) as the district court did. *See Qwest Commc'ns, Inc. v. Berkeley,* 433 F.3d 1253, 1256 (9th Cir.2006). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

After a brief furlough, Plaintiff, a prisoner at the Federal Corrections Institution, was asked to provide a urine sample when she returned to prison. The sample was tested by the National Toxicology Laboratories ("NTL"), using an Enzyme Multiple Immunoassay Test ("EMIT"). The sample tested positive for amphetamines-methamphetamine. The positive result was confirmed using gas chromatography-mass spectrometry ("GC/MS"). At a disciplinary hearing, Plaintiff presented a letter from a drug manufacturer that stated that it was a "common occurrence" for Midrin, a pain reliever that Plaintiff had been prescribed by a prison doctor, to give a false-positive result for amphetamines. After the hearing, a Disciplinary Hearing Officer ("DHO") contacted NTL and was told that NTL was unaware that Midrin caused false-positive results.

Shortly thereafter, the DHO filed a report, finding that Plaintiff had used drugs. As a result, numerous sanctions were imposed against Plaintiff, including the revocation of good-time credits. Plaintiff contends these sanctions violated her due process rights because the DHO's recommendation was not supported by "some evidence," *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), bearing sufficient "indicia of reliability," *Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir.1987). The district court found that Plaintiff's due process claims failed because (1) "some evidence" supported the DHO's decision; and (2) Defendants were entitled to qualified immunity. We agree.

The Supreme Court recognized that the revocation of good-time credits comports with due process requirements if the prison's disciplinary findings are supported by "some evidence" in the record. *Hill,* 472 U.S. at 454, 105 S.Ct. 2768. We have held that prison officials cannot meet *Hill's* "some evidence" requirement if the evidence lacks sufficient "indicia of reliability." *Cato,* 824 F.2d at 705. We are "not to make [our] own assessment of the credibility of witnesses or reweigh the evidence." *Id.* Rather, the relevant question is "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board," *Hill,* 472 U.S. at 455–56, 105 S.Ct. 2768 (emphasis added).

Courts reviewing the evidentiary value of drug tests have repeatedly held that EMIT meets due process standards. *See Higgs v. Bland,* 888 F.2d 443, 449 (6th Cir.1989); *Harmon v. Auger,* 768 F.2d 270, 276 (8th Cir.1985). Further, courts have found specifically that EMIT demon-

* The Honorable Barry T. Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

strates the necessary "indicia of reliability." *Spence v. Farrier,* 807 F.2d 753, 756 (8th Cir.1986); *Harmon,* 768 F.2d at 276. This is particularly true where, as here, multiple tests were conducted. *See Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 672 n. 2, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (finding that use of "the combination of EMIT and GC/MS tests ... is highly accurate"); *Piroglu v. Coleman,* 25 F.3d 1098, 1100 (D.C.Cir. 1994).

Were we permitted to review the entire record of evidence, *see Hill,* 472 U.S. at 455, 105 S.Ct. 2768 or allowed to reweigh the evidence, *see Cato,* 824 F.2d at 705, we might find that there is some doubt as to whether Midrin caused Plaintiff's false-positive result. However, the *Hill* standard is "minimally stringent." *Cato,* 824 F.2d at 705. Because the DHO's report stated that NTL was not aware of false-positive results caused by Midrin, and Plaintiff's sample was tested using both EMIT and GC/MS—tests recognized as "highly accurate"—we find that "some evidence" supports the DHO's determination. *Hill,* 472 U.S. at 454, 105 S.Ct. 2768. Consequently, Plaintiff's evidence and allegations, when taken as true, do not establish a violation of her due process rights. *See*

*Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 922 (9th Cir.2004).[1]

"The threshold question in deciding a summary judgment motion based on qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right." *Bingham v. City of Manhattan Beach,* 341 F.3d 939, 945 (9th Cir.2003) (*citing Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Because Plaintiff failed to allege a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.[2]

**AFFIRMED.**

---

1. Because we hold that the DHO's decision did not violate Plaintiff's due process rights, we need not separately examine the alleged conduct of each individual defendant to determine which, if any, defendants participated in issuing or upholding the decision.

2. Plaintiff's claim that her due process rights were violated because the prison did not follow the appropriate chain-of-custody procedures with her sample also fails. The Due Process Clause "simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Mackey v. Montrym,* 443 U.S. 1, 13, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). Rather, "the relevant inquiry ... is whether there was sufficient evidence in the record, regardless of [the alleged chain-of-custody]

inconsistencies or violations, to find [Plaintiff] guilty of drug use at [her] disciplinary hearing." *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002). Because "some evidence" exists to support the DHO's finding, Plaintiff's chain of custody claim fails. *See Thompson v. Owens,* 889 F.2d 500, 502 (3d Cir.1989) ("Positive urinalysis results based on samples that officials claim to be appellant's constitute some evidence of appellant's drug use. A chain of custody requirement would be nothing more or less than an 'independent assessment' into the reliability of the evidence, and *Hill* tells us, explicitly, that such a 'credibility' determination is not required." (citing *Hill,* 472 U.S. at 455, 105 S.Ct. 2768)).